SMITH *v.* WIENER.

1. EQUITY—PARTNERSHIP—FRAUD—CORPORATIONS.

   Record *held*, not to justify equitable relief by way of money decree to partners carrying on a foundry business for alleged fraud on the part of defendants in the formation of a corporation which took over insolvent partnership assets and debts and which was subsequently dissolved after the assets had been depleted by tax levy, most of remaining assets seized to pay debts and possession of property taken over for nonpayment of rent.

2. SAME—CREDITOR OF PARTNERSHIP.

   Creditor of said partnership who became stockholder of corporation and upon dissolution agreed to accept shares in a new corporation about to be formed and cancel claims against defendants *held*, not entitled to equitable relief.

Appeal from Muskegon; Vanderwerp (John), J. Submitted January 10, 1934. (Docket No. 92, Calendar No. 37,572.) Decided June 4, 1934.

Bill by Eli M. Smith, Jennie Benton and Edward Meier against Paul Wiener, individually and doing business as Michigan Inland Foundry Company, and Michigan Foundry Supply Company, a Michigan corporation, to set aside a sale of corporate assets, for injunction, accounting and damages. Decree for plaintiffs. Defendants appeal. Reversed.

*William J. Balgooyen,* for plaintiffs.

*Harris E. Galpin* and *Morton H. Steinberg,* for defendants.

FEAD, J. The suit, founded upon a claim of fraud, is to set aside a sale of corporate assets, for injunc-

tion, accounting and damages. The court gave money decree to plaintiffs.

From 1923 to 1930 plaintiffs Benton, a book-keeper, and Meier, a foundryman, were partners as White Iron Foundry Company. Their principal products were mill stars, used to polish castings. The business was small but had been successful. In 1930, however, the situation was grave and the outlook dark. The book value of the assets was about $15,000, including $2,000 for buildings on leased property, $4,845 for patterns of more or less doubtful value, and machinery carried at $3,700. The debts were about $8,000, besides taxes of $1,600. The plant was on property of the Grand Trunk Railway Company, rent of $875 was unpaid and the railway company had canceled the lease by notice. The firm owed plaintiff Smith $2,600. The claim was in the hands of an attorney who was threatening bankruptcy proceedings. Another creditor had taken judgment.

Defendant Wiener was manager and principal stockholder of the Michigan Foundry Supply Company, engaged in the scrap metal business. He had dealt with plaintiffs for some years. The Grand Trunk Railway Company approached him and induced him to lease the property occupied by the partnership. The lease was formally executed later but was effective as of January 2, 1931. It ran to the supply company for a term to December 31, 1935.

After negotiations, a new corporation was formed by plaintiffs, Wiener and a banker, Wagner, called the Inland Foundry Company, to which plaintiffs Benton and Meier conveyed the partnership property in payment for stock. With the exception of a few shares, Benton and Meier took one-third of the

stock for their partnership assets and business, Smith one-third for his claim of $2,600, and Wiener one-third.

Wiener became manager, Benton kept the books and Meier was production foreman. The business lost $2,000 in 1931 because of economic conditions. In the spring of 1932 difficulty arose and Wiener proceeded to close up the corporation. He had the supply company bring summary proceedings for the possession of premises for nonpayment of rent and also to bring suit for a debt. Judgment was entered in both actions and, in the latter, execution issued and practically all the corporate assets were seized and sold to the supply company. About that time also a levy was made for taxes and some of the property sold. Shortly thereafter the corporation was dissolved by action of the stockholders.

The theory of plaintiffs is that the whole transaction, from the formation of the corporation to the execution sale of assets, was a fraudulent scheme on the part of Wiener to acquire their property. The court determined the facts in favor of plaintiffs' theory. It found the value of the partnership as $5,500. It held that Smith's claim of $2,600 against the firm was worth only $1,500 because of the financial condition of the partnership. It entered judgment for Smith for $1,500 and for the other plaintiffs each $2,000.

The details of the claimed fraud need not be set up because we think the record does not justify relief to the plaintiffs.

The testimony upon values of the partnership property is most unsatisfactory. Meier said the firm assets were worth book value. Defendants say they were not worth over $500. The record contains no middle ground. With the lease terminated, it would have been nothing less than a financial miracle

if the firm property could pay the firm debts. The firm could be continued in business only by sufferance of its creditors and Wiener. The partnership debts were assumed by the Inland Foundry Company, except $850 assumed by Meier, and, so far as the record shows, the partners have had the benefit of relief from obligations which might have been enforced against their personal assets. In holding that Smith's claim was worth only $1,500, the court obviously determined that the partnership could not pay its debts in full.

It is apparent that, upon any fair appraisal, the property would not have been sufficient to liquidate the firm debts assumed by the corporation, and, as a matter of fact, the partners lost nothing of value. It is a case of *damnum absque injuria*.

About the time the corporation was dissolved, Smith and Wiener had negotiations for the organization of a new corporation. Later a written instrument was executed to the effect that Smith would accept 400 shares in a new corporation in consideration of all his claims, and he agreed to waive and cancel all claims he had against defendants because of his interest in the Inland Foundry Company. A new corporation has not been formed but the record does not show that Smith has repudiated the agreement. Smith's testimony does not indicate that he was at all under the domination of Wiener. He is a business man, able to take care of himself. He was diligent in looking after his own affairs. His agreement to participate in a new corporation did not contemplate any salvage to Benton and Meier. If Wiener wrecked the corporation, through his suits against it, with intent to defraud creditors, Smith must have known his purpose. We think, on the record, Smith has no call for equitable relief in this

proceeding but should be left where he has placed himself.

The decree as to Smith will be reversed without prejudice to any other right of action he may have against defendants. The decree as to Benton and Meier will be reversed and their bill dismissed, with costs of this court to defendants.

Nelson Sharpe, C. J., and Potter, North, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.